February 9, 1979

## 79-13  MEMORANDUM OPINION FOR THE DIRECTOR, OFFICE OF MANAGEMENT AND BUDGET*

**Department of Agriculture, Forest Service— Department of the Interior, National Park Service—Management Functions Over National Monuments in Admiralty and Misty Fiords, Alaska—Executive Order No. 6166 (5 U.S.C. § 901 note)—National Forest Management Act of 1976 (16 U.S.C. § 1609)**

This memorandum responds to the inquiry by your General Counsel's office whether § 2 of Executive Order No. 6166 (1933), 5 U.S.C. § 901 note (1976), creating national monuments at Admiralty and Misty Fiords, Alaska, requires the transfer of management functions over national forest lands within the monuments from the Forest Service of the Department of Agriculture to the National Park Service of the Department of the Interior; and, if so, what legal action would be necessary to secure the Forest Service's continuing administration of the lands. We conclude that the order does require the transfer of management, and that a legally effective reorganization plan, or other legislative action, is necessary in order to authorize the Forest Service to administer the two monuments.

Exercising his powers under § 2 of the Antiquities Act of 1906, 16 U.S.C. § 431 (1976),[1] the President, on December 1, 1978, created national monuments in Admiralty Island (Proc. 4611, 43 F.R. 57009

---

* This memorandum was supplemented and, in the main, superseded by a Memorandum Opinion for the Director of the Office of Management and Budget, dated February 8, 1980, reflecting a reconsideration of this opinion requested by the General Counsel of the Department of Agriculture.

[1] Section 2 of that Act reads:
   The President of the United States is authorized, in his discretion, to declare by
(Continued)

(1978)), and Misty Fiords, Alaska (Proc. 4623, 43 F.R. 57087 (1978)). Within Misty Fiords National Monument are approximately 2,285,000 acres of Federal land that had been reserved as part of Tongass National Forest in 1907, 35 Stat. (Pt. 2) 2152. Within Admiralty Island National Monument are approximately 1,100,000 acres of Federal land that were added to Tongass National Forest in 1909, 35 Stat. (Pt. 2) 2226. Because the President's powers under the Antiquities Act of 1906 extend to any "objects of historic or scientific interest that are situated upon the lands owned or controlled by the Government," the forest system status of Admiralty Island and Misty Fiords did not bar the creation of monuments on those sites. Neither were the monuments barred because of the requirement under § 9 of the National Forest Management Act of 1976, 16 U.S.C. § 1609 (1976), that lands set aside by the President as part of the national forest system not be returned to the public domain except by act of Congress. The reservation of national forest lands as parts of national monuments did not return those lands to the public domain, but, on the contrary, further restricted their lawful use to purposes consistent with the preservation of the monuments' objects.

Under § 2 of Executive Order No. 6166, issued in 1933:

> All functions of administration of * * * national monuments * * * are consolidated in the National Park Service in the Department of the Interior * * *; except that where deemed desirable there may be excluded from this provision any public building or reservation which is chiefly employed as a facility in the work of a particular agency. [5 U.S.C. § 901 note (1976).]

Because the Admiralty Island and Misty Fiords National Monuments are covered by § 2 and do not fall within the single stated exception to its general provisions, one consequence of the President's creation of national monuments on national forest lands would appear to be the transfer of the management of those lands from the Forest Service to the National Park Service. Such a transfer is consistent with a 1972 agreement between the Departments of Agriculture and the Interior that the 1933 Executive order did "expunge the dual reservation status formerly existing on monuments carved out of National Forests, and vested administration of those areas in the Department of the Interior."[2]

---

(Continued)

public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated upon the lands owned or controlled by the Government of the United States to be national monuments, and may reserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected. When such objects are situated upon a tract covered by a bona fide unperfected claim or held in private ownership, the tract, or so much thereof as may be necessary for the proper care and management of the object, may be relinquished to the Government, and the Secretary of the Interior is authorized to accept the relinquishment of such tracts in behalf of the Government of the United States.

[2] Quoted in a letter of December 11, 1978 from the Acting General Counsel, USDA, to the Acting Assistant Attorney General, Office of Legal Counsel.

The Department of Agriculture (USDA) argues, however, that § 9 of the National Forest Management Act of 1976, *pro tanto*, superseded Executive Order No. 6166 with respect to national monuments that incorporate national forest lands.[3] Based on the legislative history, USDA interprets § 9 to require that national forests set aside by the President remain within the national forest system, except when removed from the system by act of Congress. Because Congress has vested management authority over the system in USDA and the Forest Service, it follows, according to USDA, that until Congress acts to the contrary, all lands set aside by the President as national forests must be administered by the Forest Service.

If § 9 requires Admiralty Island and Misty Fiords to remain within the national forest system, the statutes relevant to the management of that system further require that the monuments be managed by the Forest Service. 16 U.S.C. § 472, 551, 1600 (1976). Ordinarily, in cases where statutes[4] are inconsistent, the most recent statute controls. Under this rule, the 1976 Act—if it does require that national forest monuments remain within the national forest system—would impliedly limit or repeal the management provisions of the Executive order. We conclude, however that § 9 does not require Admiralty Island and Misty Fiords to remain within the national forest system and that a contrary interpretation would misconstrue the statute. Thus, unless amended, Executive Order No. 6166 remains in force.

The disputed portion of § 9 reads:

> Notwithstanding the provisions of the Act of June 4, 1897, no land now or hereafter reserved or withdrawn from the public domain as national forests pursuant to the Act of March 3, 1891, or any act supplementary to and amendatory thereof, shall be returned to the public domain except by an Act of Congress.

The term "public domain" is not defined in the Act, but ordinarily it refers to unreserved lands of the United States that are subject to disposal or appropriation under the public land laws. Considering the plain meaning of its words, § 9 seems only to require that lands, once withdrawn by the President as parts of national forests, may not again become subject to private appropriation under the public land laws without an act of Congress. Such an interpretation appears wholly consistent with the express

---

[3] In connection with this opinion, we sought the views of the Department of Agriculture and of the Department of the Interior. Agriculture furnished its views to us by letter dated December 11, 1978 (*see* note 2, *supra*). In addition, we have consulted the Assistant Attorney General, Lands and Natural Resources Division.

[4] Because Exec. Order No. 6166 has the force of law and cannot be amended without the assent of Congress, *see* discussion, *infra*, our opinion assumes that the ordinary rules of statutory interpretation, *e.g.*, implicit repeals are disfavored, apply to the order. However, our conclusion as to the effect of Exec. Order No. 6166 does not rest on our judgment as to the deference a court would accord its provisions, but rather on our interpretation of 16 U.S.C. § 1609(a). Pretermitting any determination of the force that the order would have if found inconsistent with a subsequent statute, we do not believe the proper construction of § 9 is inconsistent with the order.

purpose of the section to preserve lands reserved as national forests for the "long-term benefit" of "present and future generations."

In suggesting a narrower interpretation, namely, that "shall [not] be returned to the public domain," means "shall not leave the National Forest System," Agriculture relies on one paragraph in the legislative history that appears in the report of the Senate Committee on Agriculture and Forestry on the National Forest Management Act of 1976, S. Rept. 893, 94th Cong., 2d sess. (1976). The single relevant paragraph concerning § 9 reads:

> Section 9 of the bill amends redesignated section 11(a) of the Forest and Rangeland. Renewable Resources Planning Act of 1974 by adding a provision which, in effect, gives Congressional status to National Forest lands reserved from the public domain. Other National Forests lands already have Congressional status through specific Acts, such as the Weeks Act. The new provision states that, notwithstanding the authority conferred on the President to revoke, modify, or suspend proclamations or executive orders setting apart and reserving public domain land as National Forests, public domain lands which are now or may hereafter be reserved as National Forests are not to be returned to the public domain except by an act of Congress. This does not affect the President's authority to combine National Forests, separate a forest into two or more National Forests, or change the boundary lines of a forest, providing such changes do not remove lands from National Forest status. Also unaffected are existing authorities regarding exchanges of lands involving public domain National Forests. [*Id*. at 19.]

This paragraph is, at best, inconclusive with respect to the proper interpretation of § 9. It states that the President may still modify the size and boundaries of national forests, "providing such changes do not remove lands from National Forest status." It further states that § 9 gives congressional status to national forest lands reserved from the public domain and makes reference to an impliedly analogous provision in the Weeks Act. However, the Weeks Act, which permits the purchase of lands "necessary to the regulation of the flow of navigable streams or for the production of timber," 16 U.S.C. § 515 (1976), expressly (16 U.S.C. § 521) provides that such lands:

> [S]hall be permanently reserved, held, and administered as national forest lands under the provisions of section 471 of this title and acts supplemental to and amendatory thereof.

Congress' willingness and ability to provide in the Weeks Act expressly for the permanent administration, as national forests, of lands purchased for forest use raises the question why Congress chose words with plainly different meanings in the Forest Management Act of 1976 if its purpose was the same.

The inference that Congress did not intend to provide in the National

Forest Management Act the same permanent status to lands reserved from the public domain as the Weeks Act accorded to certain acquired lands is buttressed by Congress' enactment in 1958 of a statute that expressly made acquired lands not covered by the Weeks Act subject to its protective provisions, and specifically excepted lands reserved from the public domain. 16 U.S.C. § 521a (1976). Congress, when it wanted to expand the coverage of the Weeks Act, thus referred to it expressly. Congress' decision neither to adopt the Weeks Act's phrasing, nor to incorporate it by reference as it had done in 1958, strongly implies that the intended effects of the 1976 Act, 16 U.S.C. § 1609(a), and the protective provisions of the Weeks Act, 16 U.S.C. § 521, are not the same.

Further, USDA's interpretation poses a potential problem for the interpretation of § 2 of the Antiquities Act of 1906, *supra*. Under this section, the President is empowered to declare certain landmarks, structures, and objects as national monuments, and to:

[R]eserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected.

If it were true that lands reserved from the public domain as national forests were to continue to be national forests without regard to their subsequent incorporation in national monuments, then such lands would continue to be subject to the uses approved for national forests by the Act of June 4, 1897, 16 U.S.C. §§ 473-478 (1976), the Multiple Use-Sustained Yield Act of 1960, 16 U.S.C. §§ 523-31 (1976), the Forest and Rangeland Renewable Resources Planning Act of 1974, 16 U.S.C. §§ 1601-10 (1976), and the National Forest Management Act of 1976. Of these approved uses, it is readily conceivable that timbering, in particular, might conflict in a given case with the protection of objects properly designated as the bases for a national monument. In such a case, the perpetual forest system status of public domain lands reserved as national forests would conflict with the President's ability to create and protect national monuments on public domain lands, a conflict clearly not provided for by any of the forest acts.

In a given case it may be that no such conflict would exist and the fulfillment of national forest objectives may be wholly consistent with the purposes of a national monument. However, Congress has anticipated the possibility of conflict between monument and national forest uses and it prohibited the President from creating national forests out of national monuments, 16 U.S.C. § 471(b) (1976). (This section was repealed by Pub. L. No. 94-579, Title VII § 704(a), 90 Stat. 2792.) This provision effectively leaves to Congress the judgment of compatibility since Congress could, if it so chose, give to any public land dual monument and forest status.

It might be argued that the forest statutes may be read as not requiring timbering on every acre of forest land, even if the forest land is ideally suited for such use. The complexity of the forest-related statutes and the unforeseen problems that would be posed, however, further support an

interpretation of the National Forest Management Act of 1976 which avoids even potential conflict with the Antiquities Act. Attributing to § 9 the plain meaning of its words avoids that conflict and is consistent with the statute's purpose and with the language of the Weeks Act, 16 U.S.C.§ 521a; it also preserves Congress' role in determining whether, with respect to a particular parcel of public domain land, monument and forest uses are compatible.

Because of our interpretation of § 9, the Admiralty Island and Misty Fiords National Monuments are not parts of the National Forest System but simply national monuments. Accordingly, Executive Order No. 6166 requires the transfer of management functions from the Forest Service to the National Park Service. In order to permit the Forest Service to manage these monuments, the President would have to submit to Congress a reorganization plan under § 2 of the Reorganization Act of 1977, 5 U.S.C. §§ 901-12 (1977), presumably upon finding that the return of management functions to the Forest Service would "promote the better execution of the laws," 5 U.S.C. § 901(a)(1) (1977). Under § 2, the plan would become effective "at the end of the first period of sixty calendar days of continuous session of Congress" after the transmission of the plan, unless either House of Congress voted to disapprove the plan. It is not possible to amend Executive Order No. 6166 merely by issuing an amendatory order because the original order itself became effective only with the assent of Congress. The Attorney General in 1934, concluded that the President could revoke provisions of Executive orders issued under the Act of March 3, 1933 only "in the same manner in which they were enacted into law." 37 Op. Atty. Gen. 418 (1934). The current transfer of functions under a new reorganization plan would be consistent with the Attorney General's conclusion.[5]

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5] The President, of course, is not required to act by reorganization plan and may, if he so chooses, submit a legislative proposal subject to the usual constitutional processes. Under either alternative, it should be recognized that the legislative designation of the Forest Service as the managing authority for two monuments will not itself determine the standards under which the monuments must be administered. Unlike the National Park Service, whose governing statutes, 16 U.S.C. §§ 1-3 (1976), impose particular duties on the Service in connection with all lands under its administration, the Forest Service is subject to no such specific mandate concerning the administration of non-national forest system lands. In recommending appropriate congressional action, the President may wish to consider the uses to which the monument lands should be subjected and to propose to Congress a more restrictive set of uses than would ordinarily apply to national forests.